CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 2 0 2006

JOHN F. CORCORAN, CLERK
BY:
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY L. COOPER, ) | |
| Plaintiff, ) | Civil Action No. 7:06CV00296 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| FRED SCHILLING and ) | |
| DR. NASEER MOBASHAR, ) | By: Hon. James C. Turk |
| Defendants. ) | Senior United States District Judge |

Plaintiff, Mr. Gary L. Cooper, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Named as defendants are Fred Schilling, Health Services Director for the Virginia Department of Corrections (hereinafter "VDOC" ), and Dr. Naseer Mobashar, Buckingham Correctional Center (hereinafter "BKCC") treating physician. In his complaint, plaintiff alleges that during his incarceration at BKCC, the defendants acted with deliberate indifference to his serious medical needs by continuously denying him medical treatment, specifically Interferon and Ribavirin treatment (hereinafter "interferon treatment") for Hepatitis C, in violation of his rights under the Eighth Amendment of the United States Constitution. He seeks both monetary and injunctive relief. The defendants have filed motions for summary judgment.[1] The court notified plaintiff of

---

[1] Plaintiff filed this action on or about May 15, 2006. On May 23, 2006, plaintiff filed a motion for a preliminary injunction and temporary restraining order to "ensure that he [plaintiff] receives life-saving medical treatment" as "recommended by a liver specialist." (Pl.'s Mem. Supp. at 1) Judge Michael F. Urbanski, U.S. Magistrate Judge, ordered the defendants to show cause why relief should not be granted, and they responded with affidavits from Dr. Mobashar, Dr. Stephens, VDOC Chief Physician, and Monica Goad, BKCC Operations Officer. By opinion and order dated July 31, 2006, this court denied plaintiff's motion for interlocutory injunctive relief, finding that plaintiff failed to demonstrate that he would suffer immediate and irreparable harm by a delay of a few weeks to allow defendants' to fully respond to his claims and that plaintiff failed to show a

1

defendants' motions as required by Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975) and warned plaintiff that judgment might be granted for the defendants if he did not respond to the motion by filing affidavits or other documents contradicting the defendants' evidence or otherwise explaining his claims. Plaintiff responded, making the motions ripe for the court's consideration. Upon review of the record, the court concludes that the defendants' motions for summary judgment must be granted.

## I. Plaintiff's Allegations

Plaintiff alleges the following sequence of events from which his claims arise. VDOC medical records from 1992 indicate that plaintiff was diagnosed with Hepatitis C in 1980. A liver biopsy in 1996 revealed minimal damage to plaintiff's liver. Plaintiff denies, as the defendants claim, that he received interferon treatment in 1998. A second liver biopsy in 2002 revealed significant damage to plaintiff's liver, which plaintiff claims was a direct result of the lack of interferon treatment. Plaintiff claims that during a 2002 referral visit, Dr. Karen Finke of the University of Virginia (hereinafter "UVA") Health Systems recommended a drug therapy program involving interferon treatment to combat his Hepatitis C virus. Plaintiff alleges that his platelet count was consistently over 100,000 at this time, making him eligible for interferon treatment under the VDOC Standard Treatment Guidelines (hereinafter "VDOC Guidelines"), but that the treatment was not provided.

Plaintiff was transferred to BKCC in 2004. Despite Dr. Finke's alleged recommendations for interferon treatment, plaintiff claims that his attempt to receive interferon treatment for his

---

substantial likelihood of success on the merits of his § 1983 claim. In support of their current motions, defendants incorporate the affidavits filed with their earlier response to Judge Urbanksi's order to show cause.

2

condition was denied by BKCC treating physician, Dr. Mobashar. Plaintiff has suffered from various complications of Hepatitis C since his diagnosis in 1980, particularly Thrombopenia (a continued decrease in platelet counts). Plaintiff's low platelet count prohibits him from qualifying under the VDOC Guidelines to receive interferon treatment for his Hepatitis C infection. Plaintiff claims that he has requested and been denied medical treatment to raise his low platelet count which would subsequently allow him to qualify under the VDOC Guidelines for interferon treatment. Plaintiff alleges that his current condition is life-threatening and a direct result of defendants' failure to provide interferon treatment.

## II. Exhaustion of Administrative Remedies

The defendants argue that plaintiff's claim should be dismissed because he failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act (hereinafter "PLRA"), 42 U.S.C. § 1997(e). The 1996 amendments to the PLRA require that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Plaintiff, as a Virginia inmate, is required to exhaust the claims raised in the instant complaint in accordance with the grievance procedures established by the VDOC. See Davis v. Stanford, 382 F. Supp. 2d 814, 818 (E.D. Va. 2004).

In particular, he must comply with the Division Operating Procedure (hereinafter "DOP") 866, which provides multiple levels of administrative remedies in the form of inmate grievances. DOP 866-7.13 requires that, prior to submitting a formal grievance, the inmate should demonstrate that he/she has made a good faith attempt to informally resolve the complaint.

3

Prison officials must respond in writing to the inmate's complaint within fifteen (15) days of receiving an informal complaint. DOP 866-7.5; 7.13. Responses must be made in writing with the reasons for the response stated clearly. DOP 866-7.13. Once an informal resolution has been attempted, a formal (regular) grievance may be filed within thirty (30) calendar days from the date of the occurrence/incident. DOP 866-7.14. According to the affidavit of Monica Goad, BKCC Operations Officer and supervisor of the Grievance Coordinator, BKCC policy requires that an inmate attach his informal complaint to the regular grievance as proof of his good-faith attempt to informally resolve the complaint. If the regular grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two (2) days with the intake section completed. DOP 866-7.14. An inmate may seek review of the intake decision by sending the grievance form within five (5) days to the appropriate Regional Ombudsman for a determination. Id. There is no further review of intake decisions. Id.

In the instant action, plaintiff failed to fully exhaust the grievance procedures available to him at BKCC. On March 1, 2006, plaintiff filed an Informal Resolution Attempt Form (hereinafter "IRA") claiming that the medical department was continuously denying his treatment[2] for Hepatitis C and that he had sent Nurse Lou Dixon a "Kite Form" concerning this problem on February 21, 2006. Plaintiff claimed that he had "put a sick-call request in . . . over and over." The staff reply that same day was as follows: "When did you discuss this treatment request with Chronic Care Nurse Johnson or Dr. Mobashar within the past thirty days? If you have not done so, you MUST sign up for Sick Call to have your request for additional treatment

---

[2] The court assumes that the "treatment" plaintiff continually refers to throughout his grievances is specifically the interferon treatment.

4

evaluated, and co-pay may apply." Plaintiff fails to establish that he complied with this response from prison officials.

On March 15, 2006, plaintiff attempted to file a Regular Grievance concerning the same issue. As per DOP 866-7.13, the Grievance Coordinator claimed that the filing was improper because plaintiff failed to attach an IRA to his grievance. Plaintiff was informed of this alleged error on March 17, 2006, but never re-submitted the Regular Grievance with an IRA attached. On March 23, 2006, plaintiff again filed an IRA related to the same issue. That same day plaintiff was informed that the filing period had expired because "this has been explained to you numerous times by Dr. Mobashar and Chronic Care Nurse Johnson - - prior to the 2/21/06 date listed herein."

It is apparent to the court that plaintiff put some effort into resolving his claim. However, plaintiff did not properly exhaust all of his available administrative remedies as required by 42 U.S.C. § 1997e. All of plaintiff's grievances were returned to him for failure to comply with institutional grievance procedures. Plaintiff failed to attempt to informally resolve his complaint by attaching an IRA to his Regular Grievance. Plaintiff also failed to file any of his grievances within the thirty (30) calendar days from the date of the occurrence/incident as set forth by DOP 866-7.14. The court agrees that the denial of the plaintiff's request for interferon treatment occurred well before the February 21, 2006 date designated by plaintiff. According to plaintiff's own evidence, plaintiff requested and was denied interferon treatment by Dr. Mobashar when he was transferred to BKCC in 2004. Thus, the requisite thirty (30) days had certainly expired by any of plaintiff's grievance filing dates. Moreover, plaintiff failed to seek review of any of the intake decisions. Therefore, the court could dismiss the complaint without prejudice under 42

U.S.C. § 1997e(a). The court finds, however, that defendants are entitled to summary judgment as plaintiff fails to establish that his constitutional rights have been violated.

## III. Standard of Review

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Fed. R. Civ. P. 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment appropriately lies for the movant only if there can be but one reasonable conclusion drawn from the evidence, against the nonmoving party. Anderson, 477 U.S. at 247-48.

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the nonmoving party may not rest on the mere conclusory allegations or denials of the pleadings. Fed. R. Civ. P. 56(e). Instead, the nonmoving party must respond by affidavits or otherwise and present specific facts showing that there is a genuine issue of disputed fact for trial. Id. Ordinarily, a prisoner proceeding pro se in an action filed under § 1983 may rely on the detailed factual allegations in his verified pleadings in order to withstand a motion for summary judgment by the defendants that is supported by

6

affidavits containing a conflicting version of the facts. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979). Thus, a pro se plaintiff's failure to file an opposing affidavit is not always necessary to withstand summary judgment. While the court must construe factual allegations in the nonmoving party's favor and treat them as true, however, the court need not treat the complaint's legal conclusions at true. See, e.g., Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 217-18 (4th Cir. 1994); Custer v. Sweeney, 89 F.3d 1156, 1163 (4th Cir. 1996) (holding that the court need not accept plaintiff's "unwarranted deductions," "footless conclusions of law," or "sweeping legal conclusions cast in the form of factual allegations") (internal quotations and citations omitted).

### IV. Denial of Medical Treatment

To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). In order to state a cognizable Eighth Amendment claim regarding medical treatment, an inmate must show that prison officials to whose care he was committed exhibited "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). Officials show deliberate indifference to a known, serious medical need by completely failing to consider an inmate's complaints or by acting intentionally and unreasonably to delay or deny the prisoner access to adequate medical care. Id. at 104; See also Harvey v. Mahon, No. 7:02CV3924, 2004 3334794 (W.D. Va. August 30, 2004), aff'd, No. 04-7466 (4th Cir. 2005); Alls v. Smith, No. 7:01CV00574, 2002 WL 32512731 (W.D. Va. August 7, 2002), aff'd, No. 02-7360 (4th Cir. 2003) (finding that prison officials were not deliberately indifferent

7

to prisoner's serious medical needs by denying interferon treatment for Hepatitis C based on the short length of his sentence).

To prove a constitutionally significant deprivation of medical care, the inmate must first show that, "objectively assessed," he had a "sufficiently serious" need which required medical treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at substantial risk of serious harm, usually loss of life or permanent disability; a condition for which lack of treatment perpetuates severe pain also presents a serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978).

Second, the inmate must demonstrate that each of the defendants was subjectively aware of the plaintiff's need and its seriousness. See Johnson v. Quinones, 145 F.3d 164, 168-69 (4th Cir. 1998) (finding that because evidence did not show that doctors knew inmate had pituitary gland tumor, failure to diagnose and treat tumor did not state Eighth Amendment claim even though inmate ultimately went blind). The inmate must show that the official was aware of objective evidence from which he could draw an inference that a substantial risk of harm existed, that he drew that inference, and that he failed to respond reasonably to the risk. Farmer, 511 U.S. at 844. See Belcher v. Oliver, 898 F.2d 32, 34 (4th Cir. 1990) (holding that the Constitution does not require jail officials to screen pretrial detainee for suicidal tendencies without objective evidence of serious psychiatric need).

Inadvertent failure to provide treatment, negligent diagnosis, and medical malpractice do not present constitutional deprivations. Estelle, 429 U.S. at 105-106; See also Wright v. Collins,

766 F.2d 841, 849 (4th Cir. 1985) (finding that absent exceptional circumstances, a disagreement over treatment does not amount to deliberate indifference). Therefore, the Fourth Circuit has expressed great reluctance in § 1983 cases to focus judicial scrutiny on medical judgments about the appropriateness of a specific course of medical treatment provided to an inmate:

> [W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment. The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion.

Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318, 318 (4th Cir. 1975).

## V. Analysis

Under these principles, the court concludes that plaintiff has failed to present any genuine issue of material fact in dispute and that the defendants are entitled to summary judgment as a matter of law. Taking the evidence in the light most favorable to plaintiff, the court cannot find that the defendants acted with deliberate indifference to a serious medical need.

### A. Defendants' Evidence

In their motions for summary judgment, the defendants include copies of plaintiff's medical records as well as an affidavit from Dr. Mobashar, BKCC treating physician. Plaintiff's medical records confirm that he was diagnosed with Hepatitis C in 1980 when he was incarcerated at Greenville Correctional Center (hereinafter "GRCC") located in Jarratt, Virginia. Records indicate that he "refused interferon treatment" in 1996 and that he was "not interested" in the treatment in 1997. Medical records from 1998, however, note that plaintiff had received interferon treatment at some point and that it had "helped very little."

9

In 2002, plaintiff was an inmate at Augusta Correctional Center (hereinafter "ACC"). Due to his continuing health problems, plaintiff was referred to UVA for an ultrasound and liver biopsy. Plaintiff's treating physician, Dr. Finke, diagnosed plaintiff with Cirrhosis of the liver. Plaintiff's medical records do not indicate that Dr. Finke recommended interferon treatment for plaintiff.

On May 12, 2004, plaintiff was transferred to BKCC from ACC. On May 18, 2004, Dr. Mobashar examined plaintiff and learned that plaintiff was seeking interferon treatment for his Hepatitis C virus. Dr. Mobashar informed plaintiff that, under the VDOC Guidelines, plaintiff's low platelet count precluded him from being eligible for interferon treatment.

On June 8, 2004, Plaintiff was educated by BKCC medical personnel on available treatment options for Hepatitis C and was made aware of the VDOC Guidelines criteria regarding qualification for interferon treatment. Plaintiff signed a detailed form indicating that he understood the VDOC Guidelines and that he did not meet the requisite criteria due to his low platelet count.

On August 11, 2004, Dr. Mobashar again advised plaintiff that, due to his continuously low platelet count, he was still precluded from receiving the interferon treatment that he was seeking. Dr. Mobashar informed plaintiff that he would continue to monitor plaintiff's condition, however. On April 3, 2006, plaintiff again insisted on receiving interferon treatment. Dr. Mobashar denied the request and, once again, explained the VDOC Guidelines to plaintiff and informed him that he was still not eligible for the treatment.

Dr. Mobashar claims that, in his medical judgment, interferon treatment is not medically

10

warranted or in the best interest of plaintiff. He also states that it is not standard treatment to give a patient a platelet infusion to raise the patient's platelet count in order to begin interferon treatment because one of the side effects of interferon treatment is that it destroys platelets.

Dr. Mobashar also points to the affidavit of Dr. H. Stephens, the VDOC Chief Physician, to supplement his medical evidence. Dr. Stephens explains that the VDOC follows standard treatment guidelines regarding the treatment of inmates infected with Hepatitis C that reflect the latest research and recommendations from a hybrid of sources, including the Center for Disease Control. He states that no studies have shown that Hepatitis C treatment prevents long-term complications such as cirrhosis or liver cancer in Caucasians and African-Americans. Only a minority of patients with chronic Hepatitis C respond to interferon treatment and the treatment can result in incapacitating, or even fatal, side effects. The standard VDOC Guidelines include several exclusion criteria to prevent such potential complications. Thus, the VDOC attempts to select individuals most likely to benefit from, and least likely to be harmed by, treatment for illnesses such as Hepatitis C.

Plaintiff is in the category of prisoners excluded for interferon treatment due to his low platelet count. A normal platelet count ranges from 140,000 to 420,000. Under the VDOC Guidelines, a platelet count of less than 100,000 precludes a patient from being eligible for interferon treatment. Plaintiff's platelet count has consistently been under 100,000 throughout his incarceration at BKCC and is currently at 66,000. Interferon treatment will cause a patient's platelet count to drop by an average of 33%. Platelets are responsible for blood clotting and a low platelet count may result in uncontrollable bleeding and hemorrhaging. Dr. Stephens states that there is no safe and effective way to increase a patient's platelet count.

11

**B. Fred Schilling**

The court first notes that plaintiff has not alleged any personal involvement by Mr. Schilling, VDOC Health Services Director. The Fourth Circuit Court of Appeals has held that a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990); Slakan v. Porter, 737 F.2d 368, 372 (4th Cir. 1984); Boyce v. Alizaduh, 595 F.2d 948, 953 (4th Cir. 1978). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. See Miltier, supra; Smith v. Berry, 985 F.2d 180, 184 (4th Cir. 1993) (affirming directed verdict for prison guards not in position to "act meaningfully" with regard to inmate's medical needs).

In this case, plaintiff's complaint is directed primarily at the prison physician who actually denied the medical treatment, while Mr. Schilling is a party, not for having failed to provide treatment, but more on respondeat superior principles in line with his official capacities. The court finds no evidence in the record that Mr. Schilling was personally involved with the denial of treatment. Mr. Schilling states in his affidavit that he does not make decisions regarding the diagnosis or treatment of an inmate's medical needs and that he relies on the professional judgment of doctors and nurses concerning an inmate's condition for treatment. Therefore, the court finds that plaintiff fails to carry his burden under the Fourth Circuit standards in regards to his claim against Fred Schilling.

## C. Dr. Mobashar

Plaintiff cannot rest on his conclusory allegations that his current condition is life-threatening and a direct result of Dr. Mobashar's failure to provide interferon treatment. Assuming *arguendo* that plaintiff's Hepatitis C infection and his symptoms constituted a sufficiently serious medical need, plaintiff still fails to show deliberate indifference on the part of Dr. Mobashar. Dr. Mobashar was aware of plaintiff's medical condition but determined that interferon treatment would constitute more of a danger to plaintiff than would be justified by the remote possibility of any benefit to him. The VDOC Guidelines on which Dr. Mobashar relied thoroughly covered available treatment options, side effects, estimated effectiveness, and eligibility. Plaintiff's condition was consistently monitored and compared with these guidelines. Plaintiff does not offer any facts to dispute Dr. Mobashar's information on interferon treatment. He also fails to demonstrate that he was even a qualified candidate for the treatment. Moreover, plaintiff fails to establish that his condition was worsened because Dr. Mobashar did not begin interferon treatment, or that if the Dr. Mobashar had administered the treatment, it would have arrested any degeneration in plaintiff's condition. There is no indication that Dr. Mobashar failed to consider plaintiff's complaints or that his treatment decisions were unreasonable, thus the court cannot find that Dr. Mobashar was deliberately indifferent to plaintiff's serious medical needs.

## VI. Conclusion

Accordingly, the court finds that plaintiff fails to present any genuine issue of material fact as to whether the defendants acted with deliberate indifference to his serious medical needs. At most, plaintiff alleges a disagreement over treatment and such an allegation cannot state an

13

Eighth Amendment claim of cruel and unusual punishment actionable under § 1983. Therefore, for the reasons stated, defendants' motions for summary judgment will be granted and an appropriate order issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within thirty (30) days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send certified copies of this memorandum opinion and accompanying Order to plaintiff and to counsel of record for the defendants.

ENTER: This 20th day of November, 2006.

/s/ James C. Turk
Senior United States District Judge

14